ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
DONNA WITTIG, ESQ.
Nevada Bar No. 11015
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone:  (702) 634-5000
Facsimile:  (702) 380-8572
Email:  ariel.stern@akerman.com
           donna.wittig@akerman.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA – NORTHERN DIVISION**

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No.: 2:16 cv 477 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| SIERRA CEDARS CONDOMINIUM HOMEOWNERS ASSOCIATION; LVDG SERIES 200, LLC; THUNDER PROPERTIES, INC.;  HAMPTON & HAMPTON COLLECTIONS, LLC, | |
| Defendants. | |

Plaintiff Bank of America, N.A. (**BANA**) complains as follows:

**PARTIES AND JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  BANA is a citizen of North Carolina and on information and belief none of the defendants is a citizen of North Carolina.  The amount in controvery exceeds $75,000.00.

2. BANA is a national bank with its principal place of business in Charlotte, North Carolina.  Therefore, pursuant to 28 U.S.C. § 1348, for purposes of diversity jurisdiction, BANA is deemed to be a citizen of the state of North Carolina.  *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (holding that national banks are citizens of the states where their designated main office is located for purposes of citizenship under 28 U.S.C. § 1348).

{36222143;6}

3.	Defendant Sierra Cedars Condominium Homeowners Association (**Sierra**) is a Nevada non-profit corporation.  BANA is informed and believes and therefore alleges Sierra is the purported beneficiary under an alleged homeowners' association lien.  BANA is informed and believes and therefore alleges Sierra foreclosed on the lien on January 23, 2014.

4.	Defendant LVDG Series 200, LLC (**LVDG**) is, on information and belief, a Nevada limited liability corporation.  After a reasonable search, BANA cannot determine the citizenship of the members of LVDG.  BANA is informed and believes and therefore alleges LVDG purchased the property at the HOA foreclosure sale, acquiring title via a trustee's deed upon sale dated January 27, 2014.

5.	Defendant Thunder Properties, Inc. (**Thunder**) is, on information and belief, a Nevada corporation with its principal place of business in Las Vegas, Nevada.  BANA is informed and believes and therefore alleges Thunder acquired title from LVDG via a grant deed dated July 21, 2015.

6.	Defendant Hampton & Hampton Collections, LLC (**Hampton**) is, on information and belief, a Nevada limited liability company whose members are Jay Hampton, Miles Hampton, Cameron Clark and Paul Hampton, all of whom are citizens of Nevada.  After a reasonable search, BANA cannot determine the citizenship of the members of Hampton.  BANA is informed and believes and therefore alleges Hampton conducted the foreclosure at issue in this case on behalf of Sierra.

7.	This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 for reasons stated above. The diversity of citizenship requirement is met.  *See Carolina Casualty Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082 (9th Cir. 2014).  Defendants Sierra, LVDG, Thunder, and Hampton and are not citizens of North Carolina.  The amount in controversy requirement is met.  BANA seeks a declaration that its deed of trust, which secures a loan with an outstanding balance of $99,137.10, was not extinguished by a homeowners' association non-judicial foreclosure sale that is the basis for Thunder's claim to title to the real property sub judice.

8.	Venue is proper in this Court under 28 U.S.C. §1391.  The property that is the subject

{36222143;6}

of this action is located at 2201 Kietzke Lane #B, Reno, Nevada 89502 (the **property**).  Venue is proper in this court under 28 U.S.C. § 1391(1) and (2) because this action seeks to determine an interest in property located within Washoe County, Nevada and because this lawsuit arises out of a foreclosure of real property located within Nevada.

9. The pre-litigation dispute resolution process set forth in NRS 38.300 *et seq.* is not applicable to this action and cannot restrict the jurisdiction of this court. To the extent any requirement of the statute is applicable to any portion of the claims asserted herein, that requirement has been constructively exhausted and further resort to administrative remedies would be futile because BANA submitted a demand for mediation to Nevada Real Estate Division (**NRED**) on or about November 5, 2015, but NRED has failed to schedule the mediation in the time period required by NRS 38.330(1).

## GENERAL ALLEGATIONS

10. Under Nevada state law, homeowners' associations have the right to charge property owners residing within the community assessments to cover the homeowners' associations' expenses for maintaining or improving the community, among other things.

11. When these assessments go unpaid, the association may impose a lien and then foreclose on a lien if the assessments remain unpaid.

12. NRS Chapter 116 generally provides a non-judicial foreclosure scheme for a homeowners' association to conduct a non-judicial foreclosure where the unit owner fails to pay its monthly assessments.

13. NRS 116.3116 makes a homeowners' association lien for assessments junior to a first deed of trust beneficiary's secured interest in the property, with one limited exception: a homeowners' association lien is senior to a first deed of trust beneficiary's secured interest "to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" NRS

{36222143;6}

116.3116(2)(c).

## The Deed of Trust and Assignment

14. On or about July 28, 2006, Adrean L. Peek (**borrower**) obtained a loan from Home Mortgage Direct Lenders in the amount of $78,764.00, which was secured by a deed of trust (the **senior deed of trust**) recorded against the property on August 1, 2006. A true and correct copy of the senior deed of trust is recorded with the Washoe County Recorder as **Instrument No. 3421051**.

15. The note and the senior deed of trust are insured by the Federal Housing Administration (**FHA**). Pursuant to the FHA insurance, the lender was required to submit a monthly mortgage insurance payment to the FHA. FHA monthly mortgage insurance premiums were paid by either borrower or BANA beginning September 7, 2006.

16. The senior deed of trust was assigned to BANA via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Washoe County Recorder as **Instrument No. 4094347**.

17. The senior deed of trust was assigned to The Secretary of Housing and Urban Development via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Washoe County Recorder as **Instrument No. 4384835**.

18. The senior deed of trust was assigned to Bayview Loan Servicing, LLC via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Washoe County Recorder as **Instrument No. 4391635**.

19. The senior deed of trust was assigned to BANA via an assignment of deed of trust. A true and correct copy of the assignment is recorded with the Washoe County Recorder as **Instrument No. 4486211**.

## The HOA Lien and Foreclosure

20. Upon information and belief, borrower failed to pay Sierra all amounts due to it. On August 28, 2012, Sierra, through its agent Hampton, recorded a notice of default and election to sell to satisfy an unrecorded delinquent assessment lien. The notice states the amount due to Sierra was $2,276.00, but does not specify whether it includes dues, interest, fees and collection costs in

{36222143;6}

addition to assessments. A true and correct copy of the notice of default is recorded with the Washoe County Recorder as **Instrument No. 4145823**. The notice of default also does not specify the super-priority amount claimed by Sierra and fails to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

21. On August 14, 2013, Sierra, through its agent Hampton, recorded another notice of default and election to sell. Per the notice, the amount due to Sierra was $2,806.00, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. A true and correct copy of the notice of default is recorded with the Washoe County Recorder as **Instrument No. 4268954**. The notice of default also does not specify the super-priority amount claimed by Sierra and fails to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

22. On December 13, 2013, Sierra, through its agent Hampton, recorded a notice of trustee's sale. The trustee's sale was scheduled for January 23, 2014. The notice states the amount due to Sierra was $4,872.00, but does not specify whether it includes dues, interest, fees and collection costs in addition to assessments. A true and correct copy of the notice of sale is recorded with the Washoe County Recorder as **Instrument No. 4308091**. The notice of sale does not identify the super-priority amount claimed by Sierra and fails to describe the "deficiency in payment" required by NRS 116.311635(3)(a).

23. In none of the recorded documents nor in any notice did Sierra and/or its agent Hampton provide notice of the purported super-priority lien amount, where to pay the amount, how to pay the amount or the consequences for failure to do so.

24. In none of the recorded documents did Sierra and/or its agent Hampton identify the amount of the alleged lien that was for late fees, interest, fines/violations or collection fees/costs.

25. In none of the recorded documents nor in any notice did Sierra and/or its agent Hampton specify whether it was foreclosing on the super-priority portion of its lien, if any, or on the sub-priority portion of its lien.

26. In none of the recorded documents nor in any notice did Sierra and/or its agent

{36222143;6}

1 Hampton specify the senior deed of trust would be extinguished by the Sierra foreclosure.

2     27.    In none of the recorded documents nor in any notice did Sierra and/or its agent Hampton identify any way by which the beneficiary under the senior deed of trust could satisfy the super-priority portion of Sierra's claimed lien.

    28.    The deficiencies in the notices notwithstanding, on or about October 25, 2012, after Sierra recorded its first notice of default and prior to the foreclosure sale, BANA remitted payment to Sierra, through its agent Hampton, to satisfy the super-priority amount owed to HOA.

    29.    On October 1, 2012, BANA requested a ledger from Sierra, through its agent Hampton, identifying the super-priority amount allegedly owed to Sierra. Hampton, as agent for Sierra, provided a statement of account dated October 4, 2012, which indicated that the amount required to satisfy the super-priority was $1,395.00.

    30.    Based on amount identified in Sierra's October 4, 2012 statement of account, BANA tendered $1,395.00 to Sierra, through Hampton, on October 25, 2012. Hampton acknowledged receipt of the tender letter and accompanying check. A true and correct copy of Sierra's statement of account, BANA's tender letter and Hampton's confirmation of tender are attached as **Exhibit 1**.

    31.    Despite the tender, Sierra foreclosed on the property on or about January 23, 2014. A foreclosure deed in favor of LVDG was recorded February 27, 2014. A true and correct copy of the foreclosure deed is recorded with the Washoe County Recorder as **Instrument No. 4329796**.

    32.    According to the language of the trustee's deed upon sale, the sale price at the January 23, 2014 foreclosure sale was $5,400.00. Sierra's sale of the property to LVDG for less than 8% of the value of the unpaid principal balance on the senior deed of trust, and, on information and belief, for a similarly diminutive percentage of the property's fair market value, is commercially unreasonable and not in good faith as required by NRS 116.1113.

    33.    On July 21, 2015, Thunder purportedly acquired title to the property from LVDG via a grant deed. A true and correct copy of the grant deed is recorded with the Washoe County Recorder as **Instrument No. 4494587**.

//

{36222143;6}

## FIRST CAUSE OF ACTION

### (Quiet Title/Declaratory Judgment Against All Defendants)

34. BANA repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

35. Pursuant to 28 U.S.C. § 2201 and NRS 30.040 *et seq.*, this Court is empowered to declare the rights of parties and other legal relations of parties regarding the property at issue.

36. An actual controversy has arisen between BANA and defendants regarding the property. The senior deed of trust is a first secured interest on the property. As a result of the January 23, 2014 HOA foreclosure sale and subsequent transfer, LVDG and Thunder claim an interest in the property, and on information and belief, assert Thunder owns the property free and clear of the senior deed of trust.

37. BANA's FHA insured interest in the senior deed of trust encumbering the property constitutes an interest in real property.

38. BANA is entitled to a declaration that Sierra's foreclosure did not extinguish the senior deed of trust, or, alternatively, Sierra's foreclosure is void.

*NRS Chapter 116 Violates BANA's Right to Procedural Due Process*

39. BANA asserts that Chapter 116 of the Nevada Revised Statutes' scheme of HOA super priority non-judicial foreclosure violates the BANA's procedural due process rights under the state and federal constitutions.

40. The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution protect BANA from being deprived of its deed of trust in violation of procedural due process guarantees of notice and an opportunity to be heard.

41. BANA asserts that there is no way to apply Nevada's scheme of non-judicial HOA super priority foreclosure that complies with Nevada and the United States' respective guarantees of procedural due process.

42. The Nevada Constitution does not expressly set forth a state action requirement. Even if it did, and consistent with the state action requirements of the Federal

{36222143;6}

Constitution, the state of Nevada has become sufficiently intertwined with HOA foreclosure such that state and federal procedural due process protections for BANA's deed of trust apply, to wit:

    a)    The super priority lien did not exist at common law, but rather is imposed by legislative statute.

    b)    In order to conserve governmental resources and fund the quasi-governmental HOA, Nevada's legislature made super priority mandatory, expanded the super-priority duration from six to nine months, and declared it could not contractually subordinate its lien by provisions within a HOA's covenants, conditions, and restrictions.

    c)    The super priority lien has no nexus whatsoever to a private agreement between the HOA and BANA, but, again, is imposed by legislative enactment.

    d)    Nevada and Washoe County mandated the creation of Sierra as a quasi-governmental entity to perform governmental functions including maintaining the common open spaces and private streets within the Sierra community.

43. Since the state of Nevada is responsible for the creation of the super priority lien and has made it mandatory, then Nevada's HOA super priority is the result of state action subject to procedural due process safeguards.

44. On its face, Nevada's scheme of non-judicial HOA super priority foreclosure lacks any pre deprivation notice requirements or post deprivation redemption options that are necessary components of due process:

    a)    NRS 116.31162 and NRS 116.311635 do not require that an HOA provide BANA with written notice of the sum that constitutes the super priority portion of the assessment lien.

    b)    Chapter 116 of NRS seeks to insulate its scheme of super priority non-judicial foreclosure by failing to provide any post-sale right of equity or redemption.

    c)    Chapter 116 of NRS fails to provide BANA with a statutorily enforceable mechanism to compel an HOA to inform BANA of the sum of the HOA super priority amount.

{36222143;6}

45. As applied, the HOA non-judicial foreclosure violated state and federal procedural due process protections for BANA's deed of trust since BANA was not provided with any notice its physical delivery of a check for 9 months of assessments did not redeem the deed of trust's priority prior to the HOA foreclosure

46. BANA requests that this Court void the HOA foreclosure sale or declare that LVDG's and later Thunder's title was acquired subject to the senior deed of trust because NRS 116's scheme of HOA super priority foreclosure violates the procedural process clauses of The Fourteenth Amendment of the United States Constitution and Article 1, Sec. 8, of the Nevada Constitution.

*The Supremacy Clause Bars Extinguishment of the Senior Deed of Trust*

47. The foreclosure sale did not extinguish the senior deed of trust because the extinguishment of the senior deed of trust is barred by the Supremacy Clause of the United States Constitution. Alternatively, the foreclosure sale is void.

48. The senior deed of trust is insured pursuant to Single Family Mortgage Insurance Program.

49. The federal rules, regulations, and letters that implement, govern, and interpret this FHA insurance program are found at 24 C.F.R. Part 203, the various HUD Mortgagee Letters, and HUD's Handbook, as amended from time to time.

50. In order to incentivize private lenders to participate in the Single Family Mortgage Insurance Program, participation in the program is risk free to lenders as exemplified by the following:

    a) Lenders cannot lose their insurance interest by failing to adhere to HUD's servicing regulations;

    b) Lenders are also not required to expend funds to service the mortgage that HUD has not agreed to reimburse;

    c) HUD through its program of reimbursements to participating lenders also regulates what amounts to be paid to homeowners' associations, when these amounts should be paid, and by what means they should be paid; and

{36222143;6}

      d)     Lenders are permitted to convey title to HUD, even where the property's title is subject to a homeowners' association lien, where the HOA is uncooperative and non-responsive concerning the amount of payment it is demanding to release its lien.

51. HUD's regulations are necessary to ensure that the Single Family Mortgage Insurance Program is both risk-free to participating lenders and that the Mutual Mortgage Insurance Fund is sustainable.

52. Chapter 116 of the Nevada Revised Statutes' scheme of non-judicial foreclosure that allows for the foreclosure of a super priority lien stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress under the National Housing Act's Single Family Mortgage Insurance Program and Mutual Mortgage Insurance Fund.

53. NRS Chapter 116 must yield to the federally insured senior deed of trust under the Supremacy Clause.

*Additional Reasons the HOA Foreclosure Sale Did Not Extinguish the Senior Deed of Trust*

54. The HOA sale is void or did not extinguish the senior deed of trust for additional reasons stated below.

55. The foreclosure sale did not extinguish the senior deed of trust because the recorded notices, even if they were in fact provided, failed to describe the lien in sufficient detail as required by Nevada law, including, without limitation: whether the deficiency included a "super-priority" component, the amount of the super-priority component, how the super-priority component was calculated, when payment on the super-priority component was required, where payment was to be made or the consequences for failure to pay the super-priority component. Alternatively, the HOA sale is void.

56. The foreclosure sale did not extinguish the senior deed of trust because BANA tendered and satisfied the super-priority amount and Sierra and Hampton accepted the tender. Alternatively, the HOA sale is void.

57. The foreclosure sale did not extinguish the senior deed of trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS

{36222143;6}

116.1113 in several respects, including, without limitation, the lack of sufficient notice, the sale of the property for a fraction of the loan balance or actual market value of the property, a foreclosure that was not calculated to promote an equitable sales prices for the property or to attract proper prospective purchasers, and a foreclosure sale that was designed and/or intended to result in maximum profit for Sierra, its agent Hampton and LVDG at the sale without regard to the rights and interest of those who have an interest in the loan and made the purchase of the property possible in the first place. Alternatively, the HOA sale is void.

58. The foreclosure sale did not extinguish the senior deed of trust because LVDG and Thunder do not qualify as a bona fide purchasers for value, because they were aware of, or should have been aware of, the existence of the senior deed of trust, BANA's satisfaction of the super-priority component of HOA's lien, and the commercial unreasonableness of the HOA sale. Alternatively, the HOA sale is void.

59. BANA is entitled to a declaration, pursuant to 28 U.S.C. § 2201, NRS 30.040 and NRS 40.010, that the HOA sale did not extinguish the senior deed of trust, or alternatively, the HOA sale is void.

60. BANA was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(Breach of NRS 116.1113 against Sierra and Hampton)**

61. BANA repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

62. NRS § 116.1113 and common law provide that every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement.

63. Sierra's recorded CC&Rs contain a mortgagee protection clause which represents that Sierra's entire lien will be subordinate to the senior deed of trust.

{36222143;6}

64. NRS Chapter 116 requires Sierra and its agent Hampton to comply with the obligations of the CC&Rs, including the mortgage protection clause.

65. In making the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, Sierra and Hampton undertook a duty to inform lenders and loan servicers like BANA that the representation regarding the priority of liens in the CC&Rs was false and to give BANA a reasonable opportunity to protect its interest in the property.

66. Sierra and Hampton also undertook a duty to identify the super-priority amount to lenders and loan servicers like BANA, to notify it that its security interest was at risk, and to provide an opportunity to satisfy the super-priority amount to protect its security interest in the property.

67. Sierra and its agent Hampton breached their duties of good faith by not complying with the obligations in the CC&Rs that Sierra's lien would be subordinate to the senior deed of trust, by not informing BANA that Sierra's representation in the CC&Rs regarding the priority of liens was false, not notifying BANA that Sierra's security interest was at risk, and by obstructing BANA's ability to protect BANA's security interest in the property.

68. If it is determined Sierra's sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Sierra's and its agent Hampton's breach of their obligations of good faith will cause BANA to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the HOA sale, whichever is greater.

69. BANA was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

/ /

/ /

/ /

{36222143;6}

## THIRD CAUSE OF ACTION

**(Wrongful Foreclosure against Sierra and Hampton)**

70. BANA repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

71. To the extent defendants contend or the court concludes Sierra's foreclosure sale extinguished the senior deed of trust, the foreclosure was wrongful.

72. Because BANA satisfied the super-priority portion of Sierra's lien prior to the foreclosure sale there was no default in the super-priority component of Sierra's lien at the time of the foreclosure sale and the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

73. Because Sierra and its agent Hampton sold the property for a grossly inadequate amount, compared to the value of the property and amount of outstanding liens defendants contend were extinguished by the foreclosure sale, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

74. Because Sierra and its agent Hampton violated the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

75. Because Sierra and its agent Hampton violated the good faith requirements of NRS 116.1113, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust.

76. If it is determined Sierra's foreclosure sale extinguished the senior deed of trust notwithstanding the deficiencies, violations, and improper actions described herein, Sierra's and its agent Hampton's actions will cause BANA to suffer general and special damages in the amount equal to the fair market value of the property or the unpaid principal balance of the loan at issue, plus interest, at the time of the sale, whichever is greater.

77. BANA was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

{36222143;6}

## FOURTH CAUSE OF ACTION

### (Injunctive Relief against LVDG and Thunder)

78. BANA repeats and re-alleges the preceding paragraphs as though fully set forth herein and incorporates the same by reference.

79. BANA disputes LVDG's claim it owned, and Thunder's claim it owns the property free and clear of the senior deed of trust.

80. Any sale or transfer of the property by LVDG and/or Thunder, prior to a judicial determination concerning the respective rights and interests of the parties to this case, may be rendered invalid if the senior deed of trust still encumbers the property in first position and was not extinguished by the HOA sale.

81. BANA has a substantial likelihood of success on the merits of the complaint, and damages would not adequately compensate for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the property.

82. BANA has no adequate remedy at law due to the uniqueness of the property involved in this case and the risk of the loss of the senior security interest.

83. BANA is entitled to a preliminary injunction prohibiting LVDG and/or Thunder, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust.

84. BANA is entitled to a preliminary injunction requiring LVDG and/or Thunder to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

## PRAYER FOR RELIEF

BANA requests the Court grant the following relief:

1. An order declaring that LVDG and later Thunder purchased the property subject to BANA's senior deed of trust;

2. In the alternative, an order declaring that the HOA foreclosure sale, and any resulting foreclosure deed, was void ab initio;

{36222143;6}

3. In the alternative, an order requiring Sierra and Hampton to pay BANA all amounts by which it was damaged as a result of Sierra and Hampton's wrongful foreclosure and/or violation of the good faith provisions of NRS § 116.1113;

4. A preliminary injunction prohibiting LVDG, Thunder, its successors, assigns, or agents from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust;

5. A preliminary injunction requiring Thunder to pay all taxes, insurance, and homeowner's association dues during the pendency of this action;

6. Reasonable attorneys' fees as special damages and the costs of suit; and

7. For such other and further relief the Court deems proper.

DATED March 4, 2016.

**AKERMAN LLP**

/s/ Ariel E. Stern

Ariel E. Stern, Esq.
Nevada Bar No. 8276
Donna Wittig
Nevada Bar No. 11015
1160 Town Center Drive, Suite 330
Las Vegas, Nevada 89144

*Attorneys for Plaintiff*

{36222143;6}